[Cite as *Deering v. Beatty*, 2021-Ohio-3461.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MARCIA WYNNE DEERING,  :

    Plaintiff-Appellant,  :

                           No. 110158

    v.  :

WILLIAM BEATTY, ET AL.,  :

    Defendants-Appellees.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** September 30, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-910939

---

### *Appearances:*

Ryan, L.L.P., Daniel J. Ryan, and Thomas P. Ryan, *for appellant*.

Jamie Snow, *for appellees*.

LARRY A. JONES, SR., P.J.:

**{¶ 1}** Plaintiff-appellant Marcia Wynne Deering ("Deering") appeals from the trial court's December 10, 2020 judgment granting the motion to compel of defendants-appellees William Beatty and Christine Costello (collectively "the

defendants").  For the reasons set forth below, we vacate the trial court's judgment and remand the case with instructions.

## Procedural and Factual History

**{¶ 2}** Deering filed this action on February 12, 2019, alleging that on March 2, 2017, she fell down the stairs at an apartment complex owned and maintained by the defendants and suffered personal injuries.  The defendants answered and denied any negligence.

**{¶ 3}** On July 16, 2019, the defendants served discovery demands on Deering's counsel.  The defendants issued the following relevant interrogatories:

4. Describe any and all accidents and/or personal injuries you had suffered before the incident here sued upon and give the date(s) and place(s) where such accidents and/or personal injuries occurred.

* * *

6. Please state what injuries you received in the incident sued upon in this case and, if you have not fully recovered from all your injuries, describe in detail any and all pains, ailments, complaints, injuries or disabilities that you presently have as a result of the incident.

* * *

8. State the names and addresses of all doctors whom you have seen or consulted on account of the incident sued upon in this case and the exact dates on which you saw or consulted said doctors.

**{¶ 4}** The defendants also made a request for the following pertinent documents:

4. Copies of any and all medical reports and medical records from doctors, hospitals, clinics or anyone else who has rendered treatment to or examined you subsequent to the herein incident for injuries incurred as a result of the incident.

**{¶ 5}** Deering referred to her medical records in response to the interrogatory asking to identify her injuries. She alleges that, among other injuries, she suffered injuries to her lower back and hip as a result of the fall.

**{¶ 6}** A pretrial conference was held on October 16, 2019. Defendants' counsel expressed a concern that Deering had a preexisting back condition. Thus, the defense sought to obtain records to investigate; Deering's counsel objected. The parties reached a temporary compromise: the defendants agreed to limit the dates on the authorizations to the year 2012 and forward. The defendants reserved the right to revisit the issue of medical authorizations once those records came in, however.

**{¶ 7}** Deering signed medical authorizations, and as the records came in, they showed that Deering suffered from low back injuries for decades prior to the fall at issue in this litigation. For example, in 2017, Deering treated with a physician whose notes stated that Deering was involved in three "auto accidents in the 70's and 80's with some subsequent nerve damage in the arm that necessitated removal of a rib. She has continued left lower back pain from these"; according to that physician, the pain continued "for years." Another visit to a physician in 2012 also referred to Deering's "thoracic rib" surgery in 1976. Yet another physician wrote in 2017 that Deering "has a history of chronic left low back pain, L hip, and neck pain after multiple car accidents in her 30's and 40's." Some of Deering's medical records also indicated that she had depression dating back until at least 2013.

**{¶ 8}** After obtaining the above-mentioned records, the defendants renewed their request for additional authorizations to obtain Deering's records. Further, in June 2020, Deering submitted an expert report in which the expert stated that Deering had depression related to "chronic pain issues and diminished physical capacity stemming from a fall which occurred in March of 2017." Based on that report and the medical records provided, the defense sought treatment records related to Deering's mental-health claim. The defense also requested any prior mental-health providers with which Deering treated for similar issues.

**{¶ 9}** After the defendants' unsuccessful attempt to get the discovery they requested, they filed a motion to compel, seeking "authorizations for the release of records related to Plaintiff's prior history of low back injuries and depression." Specifically, the defendants sought an order compelling Deering to produce the following:

> 1. Identity of any and all treatment providers who treated Plaintiff for low back pain;
>
> 2. Authorizations to obtain records from all providers who treated Plaintiff for low back pain from 1970 through the present;
>
> 3. Identity of any and all treatment providers who have ever treated Plaintiff for depression; and
>
> 4. Authorizations to obtain records from providers who treated Plaintiff for this depression.

**{¶ 10}** The defendants contended that the above-mentioned discovery they sought was "'related causally or historically to physical or mental injuries that are relevant to issues in [this] civil action.'" Motion to Compel, P.3, quoting *Pinnix v.*

*Marc Glassman, Inc.*, 8th Dist. Cuyahoga Nos. 97998 and 97999, 2012-Ohio-3263, ¶ 10.

**{¶ 11}** Deering opposed the motion on the following grounds (1) the defendants had not previously requested her mental health records, (2) the request was overbroad and beyond the scope of discovery, and (3) the request was "not proportional to the needs of this case and [amounted to] a fishing expedition to find some ancient event to avoid accountability for Defendants' negligence." Plaintiff's Opposition, P.1.

**{¶ 12}** The defendants filed a reply brief. In response to Deering's claim that the defense had never previously requested her mental health records, the defendants contended that their original July 2019 discovery request addressed mental health. They cited the following written discovery request: "State the names and addresses of all doctors whom you have seen or consulted on account of the incident sued upon in this case and the exact dates on which you saw or consulted said doctors." The defendants also cited the following request for documents: "Copies of any and all medical reports and medical records from doctors, hospitals, clinics or anyone else who has rendered treatment to or examined you subsequent to the herein incident for injuries as a result of the incident."

**{¶ 13}** The defendants contended that Deering's mental health was initially not a part of this case when they served their initial discovery requests, but it became a part of the case in June 2020 when Deering introduced it by submitting an expert report linking the within incident to depression from which Deering was suffering.

{¶ 14} Regarding the medical records that defendants received relative to Deering's claim of back injury, the defendants contended that limiting records dating back to 2012 was merely a "temporary compromise to get the case moving" and "[a]ll were clear * * * that Defendants reserved the right to revisit the issue of medical authorizations once those records were received." Defendants' Reply, P.4.

{¶ 15} The defendants also contended in their reply that they "suggested an in-camera review of any ordered records to allay concerns by Plaintiff of them being unrelated." *Id.* at P.11. The defendants further contended that they "proposed many months ago the option of a hold for view." *Id.* Under a "hold for view," the defendants explained that records would be held for a period of time by the person or entity gathering them so that only Deering's counsel could see them before they would be sent to the defense. Counsel would have the opportunity to object to any records that they deemed unrelated. According to the defendants, Deering rejected a hold for view, contending it would take too much time. *Id.*

{¶ 16} On December 10, 2020, the trial court granted the defendants' motion to compel. The court found that the defendants' requests for prior records for low back pain and depression related causally and historically to Deering's claims. Thus, the court ordered Deering to identify "any and all treatment providers who treated [her] for low back pain from 1970 to the present, and [to] execute authorizations to obtain those records." The court further ordered Deering to identify "any and all treatment providers who have ever treated [her] for depression

and [to] execute authorizations to obtain said records."  Deering now appeals, raising the following four assignments of error for our review:

I. The trial court committed reversible error when it granted appellees-defendants' motion to compel authorizations to release fifty years of appellant-plaintiff's medical records.

II. The trial court committed reversible error when it ordered seventy years of appellant-plaintiff's mental health records.

III. The trial court committed reversible error when it collectively defined mental health professionals to include physicians, hospitals, counselors, and social workers.

IV. The trial court committed reversible error when it ordered the disclosure of appellant's privileged health information without conducting an in camera inspection.

{¶ 17} On appeal, Deering admits she was involved in a car accident in the 1970s that caused injuries to her thoracic spine.  She contends that the injury caused radiation down her arm and required the surgical removal of rib bone to alleviate the pain.  Deering maintains "[t]o the best of her recollection, she has not received treatment for this injury since 1977."  It is Deering's contention that the injury to her thoracic area that she suffered in the 1970s is distinct from the injury she alleges suffered to her lumbar (lower back) in the within incident.  Deering admits that during the year prior to the alleged injuries sustained in this accident, she sought medical treatment related to unexplained low back pain and underwent radiographic testing in December 2016, which found "lumbar spondylosis, but no acute findings."  Deering later learned through subsequent testing and treatment that the source of this low back pain was from an "occlusion of the carotid artery."

{¶ 18} Deering contends that she sought treatment after the fall that is the subject of this case, and an October 2018 MRI indicated several vertebral disc bulges and a lumbar disc herniation.

{¶ 19} In regard to her mental health, Deering maintains that she has received mental health services "over the entirety of her life," but contends "[s]he was not receiving mental health treatment at the time of her fall at the apartment building and had not received mental health treatment for several years prior." However, after the subject fall, Deering received counseling from a licensed independent social worker, who provides "talk therapy and focuses on [her] symptoms of depression related to her chronic pain and diminished physical capacity stemming from the March 2017 fall at the apartment building."

**Law and Analysis**

{¶ 20} Deering contends that "[t]his interlocutory appeal concerns the trial court's decision ordering the release of fifty years of [her] privileged medical records and seventy years of her privileged mental health counseling records." She cites Ohio's physician-patient privilege under R.C. 2317.02(B) and Ohio's counselor and social-worker privilege under R.C. 2317.02(G).

{¶ 21} Deering did not raise the physician-patient or counselor and social worker-privileges at the trial-court level, however. Rather, her contention at the trial-court level was that the defendants' request was overbroad and constituted a fishing expedition. Generally, a party's failure to raise an issue at the trial-court level acts as a waiver of the issue on appeal. *State ex rel. Zollner v. Indus. Comm.*, 66

Ohio St.3d 276, 278, 611 N.E.2d 830 (1993), citing *State ex rel. Gibson v. Indus. Comm.*, 39 Ohio St.3d 319, 530 N.E.2d 916 (1988). The law recognizes that a person's medical records are confidential, however. *Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, ¶ 9.

**{¶ 22}** A trial court's decision regarding discovery matters is generally reviewed for an abuse of discretion. *Wall v. Ohio Permanente Med. Group Inc.*, 119 Ohio App.3d 654, 661, 695 N.E.2d 1233 (8th Dist.1997). The Ohio Supreme Court has held, however, that "if the discovery issue involves an alleged privilege * * * it is a question of law that must be reviewed de novo." *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13, citing *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237. Because this appeal involves a discovery issue surrounding materials that are potentially covered by the physician-patient and social worker and counselor-patient privileges, our standard of review is de novo. *Id.*

**{¶ 23}** The purpose of the privileges is to encourage patients to be completely candid with the professionals, resulting in better treatment and permitting patients to be free of the worry that information told to them in private may someday be made public. *See Wargo v. Buck*, 123 Ohio App.3d 110, 120, 703 N.E.2d 811 (7th Dist.1997). If a patient files a civil action, however, the privilege is lifted to a certain extent. *See* R.C. 2317.02(B)(1)(a)(iii). The rationale behind waiver of the privileges is "to prevent patients from filing personal injury actions and then using the privilege to avoid responding to discovery requests." *Wargo* at *id.*, citing Robert A.

Wade, *Note, The Ohio Physician-Patient Privilege: Modified, Revised, and Defined*, 49 Ohio St.L.J. 1147, 1157 (1989) ("If the physical condition of the patient is at issue in a case, it would be a burlesque upon logic to allow the patient to claim the privilege.").

**{¶ 24}** A professional may be compelled to testify or submit to discovery only as to communications that are "related causally or historically to physical or mental injuries that are relevant to issues" in the civil action. *See* R.C. 2317.02(B) and (G). Thus, if the records are covered by R.C. 2317.02 and waiver of the privilege applies, the trial court must determine whether the records are related causally or historically to physical or mental injuries relevant to the issues in the case. *Folmar v. Griffin*, 166 Ohio App.3d 154, 2006-Ohio-1849, 849 N.E.2d 324, ¶ 23 (5th Dist.).

**{¶ 25}** The physician-patient privilege is statutory and in derogation of the common law; therefore, it must be strictly construed against the party seeking to assert it. *Wargo* at *id.*, citing *Ohio State Med. Bd. v. Miller*, 44 Ohio St.3d 136, 140, 541 N.E.2d 602 (1989). Further, the party opposing a discovery request has the burden to establish that the requested information would not reasonably lead to discovery of admissible evidence. *Pinnix*, 8th Dist. Cuyahoga Nos. 97998 and 97999, 2012-Ohio-3263, ¶ 9, citing *State ex rel. Fisher v. Rose Chevrolet, Inc.*, 82 Ohio App.3d 520, 523, 612 N.E.2d 782 (12th Dist.1992).

**{¶ 26}** Generally, however, "when there is a dispute over whether certain medical records are causally and historically related to the issues in the case, a court should conduct an in camera inspection of those records to make that

determination." *Groening v. Pitney Bowes, Inc.*, 8th Dist. Cuyahoga No. 91394, 2009-Ohio-357, ¶ 12, citing *Neftzer v. Neftzer*, 140 Ohio App.3d 618, 748 N.E.2d 608 (12th Dist.2000), and *Nester v. Lima Mem. Hosp.*, 139 Ohio App.3d 883, 745 N.E.2d 1153 (3d Dist.2000).

**{¶ 27}** As mentioned, the defendants contend that they suggested an in camera review. At oral argument, Deering's counsel was unable to say for certain if he requested such a review, but both he and defendants' counsel stated that they were not opposed to it. Given the sensitive nature of the information at issue, the trial court should have conducted an in camera inspection in order to determine which, if any, of the subject records are causally or historically related to Deering's claims. *See Groening* at ¶ 13, citing *Porter v. Litigation Mgt., Inc.*, 8th Dist. Cuyahoga No. 76159, 2000 Ohio App. LEXIS 2022 (May 11, 2000).

**{¶ 28}** In light of the above, the fourth assignment of error is sustained.

**{¶ 29}** Our resolution of the fourth assignment of error renders the remaining assignments moot. *See* App.R. 12(A)(1)(c). We do briefly address one other issue raised by Deering, however. The record demonstrates that Deering filed her opposition to the defendants' motion to compel on November 24, 2020. On December 3, 2020, the defendants filed a motion for leave to file a reply brief instanter; the medical releases the defendants sought Deering to sign were attached to the reply brief. The trial court granted the defendants' motion to file its reply on December 7, 2020. On December 10, 2020, the trial court issued the judgment from which Deering has appealed.

**{¶ 30}** Deering now contends that she "was not offered meaningful opportunity to [respond to] the newly attached releases that were attached [to] the reply brief." Deering contends that "[t]here were no exhibits attached to the motion to compel and the Appellant had no opportunity to respond to the information contained within the reply in support for their motion to compel."

**{¶ 31}** In addition to the above-mentioned medical releases, other exhibits were attached to the defendants' motion to file their reply brief instanter. One exhibit was a July 16, 2019 letter from defendants' counsel to Deering's counsel propounding its interrogatories and request for production of documents. The letter stated the following: "Medical Authorizations are included in the Request for Production of Documents. Please have your client sign and date the medical authorizations and include the names of all medical providers." The defendants' request for production of documents referred to other documentation Deering now contends was "new." For example, the request stated, "Also attached for your convenience is an authorization form for the Bureau of Workers' Compensation as well as an employment authorization."

**{¶ 32}** It is true that the defendants did not attach the authorizations to their motion to compel, but the record (and a careful reading of Deering's argument) does not support Deering's contention that they were "new," in the sense that Deering had never seen them before; rather, as Deering states, they were merely "newly attached."

**{¶ 33}**    In conclusion, Deering's fourth assignment of error is sustained. The trial court's judgment is vacated, and the case is remanded. Upon remand, the trial court is instructed to conduct an in camera inspection of the requested records to determine which records, if any, are pertinent to the issues in this action. Only information that relates to issues in this case is discoverable.

**{¶ 34}**    Vacated and remanded.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MICHELLE J. SHEEHAN, J., CONCUR