[Cite as *Watkins v. Good Samaritan Hosp. of Cincinnati*, 2016-Ohio-7458.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| LAGENIA WATKINS, Individually and as parent and natural guardian of LORENZO MIKELL HAMPTON, a minor, | : | APPEAL NO. C-160194<br>TRIAL NO. A-1500979 |
| | : | *O P I N I O N.* |
| and | : | |
| LORENZO HAMPTON, Individually and as parent and natural guardian of LORENZO MIKELL HAMPTON, a minor, | : | |
| | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| THE GOOD SAMARITAN HOSPITAL OF CINCINNATI OHIO, | : | |
| DAVID DHANRAJ, M.D., | : | |
| and | : | |
| KIMBERLY L. EVANS, M.D., | : | |
| Defendants-Appellants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  October 26, 2016

*The Lawrence Firm, PSC, Richard D. Lawrence, Robert D. Lewis* and *Jennifer L. Lawrence*, and *Miller Weisbrod, LP*, and *Lawrence R. Lassiter* for Plaintiffs-Appellees,

*Rendigs, Fry, Kiely & Dennis, LLP, Thomas M. Evans, Felix J. Gora* and *Arthur E. Phelps, Jr.*, for Defendants-Appellants.

STAUTBERG, Judge.

{¶1}   Defendants-appellants The Good Samaritan Hospital of Cincinnati Ohio ("GSH"), Dr. David Dhanraj, and Dr. Kimberly Evans claim that the trial court erred when it ordered GSH to produce certain documents during discovery because the documents were privileged peer review materials under R.C. 2305.252. GSH, Dr. Dhanraj, and Dr. Evans seek review of two orders issued by the trial court—a December 14, 2015 order and a January 11, 2016 order. We reverse the trial court's December 14, 2015 judgment and remand this cause for further proceedings. We lack jurisdiction to consider the January 11, 2016 order.

## Facts

{¶2}   Plaintiffs-appellees LaGenia Watkins and Lorenzo Hampton on behalf of themselves and their minor son, Lorenzo Mikell Hampton, ("plaintiffs") sued GSH, Dr. Dhanraj, and Dr. Evans in connection with Lorenzo Mikell Hampton's delivery. The plaintiffs claimed medical negligence on the part of Dr. Dhanraj and Dr. Evans, and sought to hold GSH liable under the doctrine of respondeat superior. The plaintiffs further claimed gross negligence on the part of all the defendants, and Watkins and Hampton sued for loss of filial consortium.

{¶3}   During discovery, in their request for production of documents numbered 24 ("RFP 24"), plaintiffs sought from GSH:

Personnel records:  The following personnel or employment records of your employees, agents, or servants (this includes doctors, residents, nurses and other medical personnel) involved in the care and treatment of LaGenia Watkins and/or Lorenzo Mikell Hampton at any time during the treatment in question (this request includes but is not limited to:  David Dhanraj, M.D., Kimberly L. Evans, M.D., B.

2

Rufenberger, RN, Anne Mason RN, CNP, C. Smith RN, K. Casson RN, and T. Jones RN):

(a)     Application for employment;

(b)     Evaluations;

(c)     Payroll records and salary history;

(d)     Continuing education, testing and training information;

(e)     Documents concerning reprimands, criticisms, or evaluations.

{¶4}   GSH objected to RFP 24 on multiple grounds, including an assertion that the documents were protected by peer review privilege. Plaintiffs subsequently moved the trial court for an order to compel production.   In its memorandum in opposition to plaintiffs' motion to compel, GSH stated that RFP 24 "clearly" embraced documents " 'involving the competence' as well as the 'professional qualifications' of the health care providers in question."   And that "[c]ertainly, the identified items in RFP 24 (a) through (e) * * * on their face implicate competency and qualifications which are protected under Ohio's peer review statute." GSH concluded, without much further elaboration, that it was "statutorily precluded from producing these records as the statute strictly prohibits it."

{¶5}   In response, plaintiffs maintained that these documents were not subject to the peer review privilege, and requested that the trial court conduct an in camera review of the disputed items to discern whether the peer review privilege applied and to what extent.

{¶6}   The trial court conducted a hearing on plaintiffs' motion to compel. The plaintiffs' motion had involved multiple discovery issues aside from RFP 24, and at the hearing GSH did not specifically address the peer review privilege issue.   On

3

December 14, 2015, without conducting an in camera review of the disputed documents, the trial court ordered GSH to produce them.

{¶7} GSH did not produce the documents and instead moved the court to vacate its December 14, 2015 order compelling the production of what GSH again asserted were peer review privileged materials. GSH requested an in camera review of the documents, and submitted to the trial court the disputed documents along with a privilege log for the court's review. On January 11, 2016, the trial court overruled GSH's motion to vacate. On January 13, 2016, GSH filed a notice of appeal seeking to appeal both the December 14, 2015 and the January 11, 2016 orders.

{¶8} In a single assignment of error, GSH, Dr. Dhanraj, and Dr. Evans contend that the trial court erred when it granted plaintiffs' motion to compel and when it denied GSH's motion to vacate.

Our Jurisdiction and the January 11 Order

{¶9} Our appellate jurisdiction is limited to review of trial courts' final orders. Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2505.02. An order that compels production of documents that are allegedly protected by the peer review privilege is a final order under R.C. 2305.252(A). *See Young v. UC Health, West Chester Hosp.*, 1st Dist. Hamilton Nos. C-150562 and C-150566, 2016-Ohio-5526, ¶ 13. We therefore have jurisdiction to review the trial court's December 14, 2015 order to the extent that it pertains to GSH's objections to RFP 24.

{¶10} The January 11, 2016 order, however, was not a final order. GSH's "motion to vacate" the trial court's December 14, 2015 order was a legal nullity because it sought a reconsideration of a final order. *See Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 423 N.E.2d 1105 (1981), paragraph one of the syllabus. Consequently, the trial court's order denying the motion to vacate was also a legal

4

nullity—and not a final order. We are therefore without jurisdiction to review it. *See Manley v. Heather Hill, Inc.*, 175 Ohio App.3d 155, 2007-Ohio-6944, 885 N.E.2d 971, ¶ 29 (11th Dist.).

The December 14, 2015 Order

{¶11} Turning to the merits of GSH, Dr. Dhanraj, and Dr. Evans's argument concerning the trial court's December 14, 2015 order, we hold that the trial court erred when it failed to conduct an in camera review of the disputed documents before ordering GSH to produce them.

{¶12} When a discovery order involves a claimed privilege, we review the trial court's order de novo. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13; *Flynn v. Univ. Hosp., Inc.* 172 Ohio App.3d 775, 2007-Ohio-4468, 876 N.E.2d 1300, ¶ 4 (1st Dist.).

{¶13} Plaintiffs correctly point out that GSH had the burden to demonstrate whether the peer review privilege contained in R.C. 2305.252 applied in this case. *See Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976) (the party asserting a privilege must show that the privilege applies). In pertinent part, R.C. 2305.252, the peer review privilege statue, provides:

> Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee.

{¶14} "Peer review committee" is defined in R.C. 2305.25 (E)(1) as:

5

a utilization review committee, quality assessment committee performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:

(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;

(b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions.

{¶15} The peer review privilege is in derogation of the common law, and is strictly construed against those seeking to invoke it. *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, ¶ 9 (8th Dist.), citing *Nilavar v. Mercy Health Sys.*, 210 F.R.D. 597 (S.D.Ohio 2002). A statutory privilege may be applied only to those circumstances set forth in the statute. *Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, at ¶ 15; *Weis v. Weis*, 147 Ohio St. 416, 428, 72 N.E.2d 245 (1947) (a privilege in derogation of the common law "must be strictly construed and must be held to afford protection only to those relationships specifically named in the statute").

{¶16} Under R.C. 2305.252, GSH was required to show that a peer review committee existed as defined in R.C. 2305.25(E), and that the documents sought by plaintiffs were "records within the scope of a peer review committee." *See Bailey v. Manor Care of Mayfield Hts.*, 2013-Ohio-4927, 4 N.E.3d 1071, ¶ 26-28 (8th Dist.). Here, GSH stated in its memorandum in opposition to plaintiffs' motion to compel that RFP 24 embraced documents " 'involving the competence' as well as the 'professional qualifications' of the health care providers in question." And that

"[c]ertainly, the identified items in RFP 24 (a) through (e) * * * on their face implicate competency and qualifications which are protected under Ohio's peer review statute." Although GSH's mere assertions were not sufficient to prove entitlement to the privilege, they were sufficient to trigger an in camera review of the documents by the trial court. "When there is a dispute about whether records are privileged, and when a party reasonably asserts that records should remain privileged, the trial court must conduct an in-camera inspection of the records to determine if they are discoverable." *Cargile v. Barrow*, 182 Ohio App.3d 55, 2009-Ohio-371, 911 N.E.2d 911, ¶ 12 (1st Dist.). The trial court erred in failing to do so.

{¶17} We therefore reverse the trial court's discovery order compelling production of the documents requested in RFP 24, and remand this cause for the trial court to conduct an in camera inspection of the disputed documents to determine whether the peer review privilege applies. To effectuate the in camera review, the trial court may order GSH to produce the requested documents with a privilege log, detailing why privilege should attach to each document.

{¶18} In sum, GSH, Dr. Dhanraj, and Dr. Evans's sole assignment of error as it pertains to the trial court's December 14, 2015 order is sustained. We reverse the trial court's order compelling discovery of the documents requested in RFP 24, and remand this cause for the trial court to conduct an in camera inspection of the disputed documents to determine whether the peer review privilege applies.

Judgment reversed and cause remanded.

HENDON, P.J., and MOCK, J., concur.

Please note:

This court has recorded its own entry this date.